Filed 4/1/16  In re D.G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.G., et al., Persons Coming Under the Juvenile Court Law. | B267443 (Los Angeles County Super. Ct. No. CK99349) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.A., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

Janette F. Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Brian Mahler, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

M.A. (mother) appeals from the dependency court's August 24, 2015 order terminating her parental rights under Welfare and Institutions Code section 366.26[1] and selecting adoption as the permanent plan for her three children, ages four, three, and two. Mother contends the dependency court committed prejudicial error by denying her section 388 petition[2] without a hearing. Mother further contends the trial court erroneously found no statutory exception applied to prevent termination of her parental rights. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On July 9, 2013, mother and father[3] waived their rights and pleaded no contest to a dependency petition filed by the Los Angeles County Department of Children and Family Services (Department), alleging their two children, then ages two and eight months, were described by section 300, subdivision (b) based on an unresolved history of violence between the parents, as well as father's history of substance abuse. The dependency court sustained the allegations, placed the children with mother, and entered a permanent restraining order preventing father from contacting mother. Mother's case plan required her to attend domestic violence classes and individual counseling. She would receive family preservation services and ensure that father remained out of the family home.

The parents' third child was born in October 2013. Mother disclosed to the Department that father had been at the hospital to sign paternity documents. When the social worker explained to mother that father's visit was a violation of the restraining

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

[2] Section 388 permits a parent to petition the court for a hearing to change an earlier order in the dependency proceeding.

[3] Father's parental rights were terminated, but he is not a party to this appeal.

2

order against him, mother said it was a one-time incident and she had not seen or heard from him since then. By January 2014, mother had only completed 9 of the 15 required sessions of a domestic violence program. Her poor attendance was attributed to being pregnant and the responsibility of caring for three children under the age of three. Mother was unable to obtain individual counseling because she did not meet the medical necessity requirements for such counseling.

On January 15, 2014, the Department filed a new petition with respect to mother's youngest child, which the court sustained under section 300, subdivision (j), based on the child's status as a sibling to two children who were already adjudicated as dependents of the court. The Department's jurisdiction report dated February 10, 2014, described mother as cooperative and receptive to the Department's services. The court sustained an amended petition after the parents waived their rights to contest.

In June 2014, the Department received a referral call from a neighbor claiming that father was living with mother, and that the oldest child had a bruise on his face. When the Department made an unannounced visit, there was no evidence that father was living at mother's home, but mother did admit accepting a ride from father, and permitting her oldest child, who was then almost three years old, to ride in the car without a car seat. The social worker explained to mother that her actions in accepting a ride with father violated the restraining order and placed the child in jeopardy. Mother agreed to have only monitored contact with her children, who would reside with maternal grandmother. The Department filed a subsequent petition under section 342, alleging the children were at risk under subdivisions (b) and (j) based on mother's actions. Specifically, mother (1) allowed father to have access to all three children in violation of the restraining order and the court's order that the father only have visits in the presence of a Department-approved monitor who was not mother, and (2) placed the oldest child in danger by permitting him to ride in father's car without a car seat. The court sustained the allegations on July 30, 2014, ordered that the children would remain placed with their maternal grandmother, and mother's visits could be monitored by maternal grandmother, but mother was not permitted to remain in the home with the children overnight.

According to the Department reports, Mother repeatedly said she would enroll in services, but either did not enroll or attended inconsistently. On February 17, 2015, the Department investigated a report that mother and maternal grandmother were hitting and cursing at the children, and mother was driving the children without car seats. The reporting party also claimed that maternal uncle smoked marijuana around the children. A Department social worker visited the address, and concluded the allegations were substantiated, because when she arrived at the home at 12:15 a.m., maternal grandmother was home, but the children were not. The social worker discovered that mother had taken the children to McDonald's. The social worker explained to both mother and maternal grandmother that they had violated the court's order requiring monitored visits for mother and detained the children, who were dirty, smelly, and asleep in a car that smelled of marijuana. Once again, the oldest child was not in a car seat. The children were immediately removed from maternal grandmother's custody and placed in foster care based on a February 23, 2015, supplemental petition under section 387, approved by the court on April 15, 2015. The court terminated mother's reunification services on March 4, 2015.

The two older children were initially placed in a different foster home than the youngest. After the children were placed in foster care, mother visited them consistently once a week, although she did miss a few visits, left early from some, and arrived late for others. She would take the children toys, food, shoes, and clothes, and would take them to the park, where they would play and sing. The foster parents for the older children reported that the visits went well and the children were happy to see their mother, although they often would not listen to mother, and mother was unable to redirect them. The children had a difficult time allowing mother to leave, and a foster parent reported that on one occasion, the oldest ran into mother's car and when the foster parent went to the car to get the child, the car reeked of marijuana. Both sets of foster parents reported that the children knew curse words and the oldest would act aggressively towards his younger sister, saying "Te voy a dar con el cinto," which meant "I'm going to hit you with a belt." When the foster mother asked him why he said that, he said he had seen

4

father hit mother with a belt. He was also observed grabbing his younger sister and trying to pull her hair, saying he had seen father do that to his mother. Mother denied father had ever pulled her hair.

The two older children were reunited with their youngest sibling in early August 2015, in part because the youngest sibling's foster mother expressed a desire to adopt all three children. The three children were doing well in their foster placement, and the Department recommended that the court terminate the parental rights of both parents and select a permanent plan of adoption by the foster parent.

On August 10, 2015, mother enrolled in individual counseling. She completed a 13-week domestic violence class on August 12, 2015. On August 19, 2015, mother filed a petition under section 388, seeking a change to the court's order terminating mother's reunification services. Mother asked the court to place the children with her or alternatively, to reinstate family reunification services. The court denied mother's petition without a hearing.

A "Last Minute Information" report dated August 24, 2015, stated that the foster mother had called mother's phone number because the children wanted to speak with her, and a man answered the phone. The oldest child recognized the man's voice as his father's, and the man hung up when the child said "That's my dad." The mother immediately called foster mother stating her phone broke and she no longer had the other number. She later claimed that the child had heard a male voice because the call had gone to voice mail.

On August 24, 2015, the court held a selection and implementation hearing under section 366.26. The court admitted several Department reports into evidence, and heard testimony from mother. Minors' counsel pointed out that while mother's visits are enjoyable to the children, she has not played a parental role for 14 months, and the children deserved permanency and stability. Minors' counsel asked the court to terminate parental rights. Father's counsel questioned why the Department was in a hurry to achieve permanency, and asked the court to consider legal guardianship rather than adoption. Mother's counsel joined the arguments made by father's counsel, and

5

argued that while mother was not perfect, the children had a substantial bond with her, and asked the court to find that the parental relationship exception applied, and that legal guardianship was more appropriate than adoption. Counsel for the Department argued that the mother had violated court orders multiple times, and that the benefit of permanency outweighed the children's bond with mother.

The court acknowledged the bond between children and their mother, but noted that she was just starting on complying with the case plan. It terminated mother's parental rights, finding no exception to adoption applicable.

## DISCUSSION

### 388 Petition

Mother contends the lower court erroneously denied her August 19, 2015 section 388 petition without a hearing. We disagree.

"We review the juvenile court's denial of a section 388 petition for an abuse of discretion. [Citation.]" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.) The court abuses its discretion when a decision is arbitrary, capricious, or patently absurd or exceeds the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. [Citation.] [¶] However, if the liberally construed allegations of the petition do

6

not make a prima facie showing of changed circumstances *and* that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. [Citation.]" (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806, italics added.)

The juvenile court may consider the entire factual and procedural history of the case in deciding whether to grant a hearing on a petition under section 388. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.) The asserted change in circumstances "must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) In determining whether a change in placement is warranted, the court may consider factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner. (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447.) In assessing the best interests of the child, "a primary consideration . . . is the goal of assuring stability and continuity." (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

Liberally construing mother's petition, the court did not abuse its discretion in concluding that mother had not made a prima facie case warranting a hearing, when her assertions were considered in the context of the entire case. The dependency proceeding began in May 2013 when two of mother's children were younger than two years old, and she was pregnant with her third child. For over two years, mother failed to enroll in individual counseling or complete a domestic violence program. During that time, mother violated the restraining order against father, and then violated the court's order requiring maternal grandmother to monitor mother's visits with the children. Mother twice admitted to transporting her oldest child without a car seat, the second time in a car that two social workers confirmed smelled so strongly of marijuana that either someone had been smoking or there was marijuana in the car. Her two younger children were also

7

asleep in the car that smelled of marijuana. In early 2015, mother had multiple conversations with Department social workers where she said she would enroll in services, but then failed to do so. The children were placed in foster care in February 2015, and mother's reunification services were terminated in March 2015. The only "change" identified in mother's August 2015 petition was the fact that she had completed her domestic violence program and started individual therapy, the same reunification services the court had ordered two years earlier in 2013. The lower court did not abuse its discretion in concluding that such belated compliance did not constitute a change of a sufficiently significant nature that it required setting aside the court's order terminating services or placing the children in foster care. (*In re A.A.*, *supra*, 203 Cal.App.4th at p. 612.)

The only reason mother proffered for why a change to the court's orders would be in her children's best interests was that the children were attached to her, she had visited them consistently, and she was "willing to do what it takes to help them and protect them." Mother offers no evidence that delaying the adoption of her three young children to give her additional time to complete her reunification services would be in their best interests, particularly in light of the fact that they are currently placed in the home of the foster parent who is both willing and interested in adopting all three of them. Mother's petition does not meet the prima facie requirements for the two showings required under section 388.

## Parental Relationship Exception

Mother contends the dependency court erred when it found the parental relationship exception under section 366.26, subdivision (c)(1)(B)(i) inapplicable, and seeks reversal of the order terminating her parental rights. We find no error.

We assess whether the court's order on the parental relationship exception is supported by substantial evidence.[4] (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1166.) If supported by substantial evidence, the finding here must be upheld, even though substantial evidence may also exist that would support a contrary result and the dependency court might have reached a different conclusion had it determined the facts and weighed credibility differently. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

Under section 366.26, subdivision (c)(1)(B)(i), if the dependency court terminates reunification services and finds the child is adoptable, it must terminate parental rights unless it "finds a compelling reason for determining that termination would be detrimental to the child due to [the circumstance that the parent has] [¶] . . . maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

---

[4] "[S]ome courts have applied different standards of review. (*In re K.P.* [(2012)] 203 Cal.App.4th [614,] 621-622 [question of whether beneficial parental relationship exists is reviewed for substantial evidence, whereas question of whether relationship provides compelling reason for applying exception is reviewed for abuse of discretion]; *In re C.B.* (2010) 190 Cal.App.4th 102, 122-123 [abuse of discretion standard governs review, but 'pure' factual findings reviewed for substantial evidence]; *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351 [applying abuse of discretion standard].) On the record before us, we would affirm under either of these standards. (E.g., *Jasmine D.*, at p. 1351 [practical differences between substantial evidence and abuse of discretion standards are minor].)" (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1166, fn. 7.)

9

Although mother maintained consistent visitation with her children, there is substantial evidence to support a finding that the second prong of the exception was not satisfied. The parental relationship exception "does not permit a parent who has failed to reunify with an adoptable child to derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1348.) "A parent must show more than frequent and loving contact or pleasant visits. [Citation.] 'Interaction between natural parent and child will always confer some incidental benefit to the child. . . .' [Citation.] The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment between child and parent. [Citations.] Further, to establish the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show the child would suffer detriment if his or her relationship with the parent were terminated. [Citation.]" (*In re C.F.* (2011) 193 Cal.App.4th 549, 555, fn. omitted.) "The significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation. [Citation.]" (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Mother's relationship with her three children did not promote their well-being "'to such a degree as to outweigh the well-being the child[ren] would gain in a permanent home with new, adoptive parents.'" (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534; accord, *In re Jasmine D.*, *supra*, 78 Cal.App.4th at pp. 1347-1350.) The children were poorly behaved and used curse words when they were first placed in foster care. Even the youngest, who was only one year old at the time, used curse words, and the older ones would swear, displayed aggressive behavior, and would not listen to directions. During visits with mother, there were times when mother would arrive late or leave early, and other times when mother was not engaged with the children or they would not follow her directions. More significantly, mother's actions during the course of this case, from accepting a ride from father despite having a restraining order against him, to taking the children to McDonald's in violation of the court's order requiring monitored visits, and then returning in a car with a strong marijuana odor, provide

10

evidence to support the court's finding that termination of mother's parental rights would not be detrimental to the children. We do not second-guess the dependency court's finding that the benefit of permanency outweighs any possible benefit of legally preserving the relationship between mother and her children. The court's determination the parental relationship exception does not apply in this case is supported by substantial evidence.

## DISPOSITION

The order denying mother's petition under section 388 and the order terminating mother's parental rights are affirmed.


KRIEGLER, Acting P. J.

We concur:



BAKER, J.



KUMAR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.